Sergio MARTICORENA, Plaintiff and Appellant,

v.

Richard W. MILLER, Defendant and Respondent.

No. 15858.

Supreme Court of Utah.

July 11, 1979.

**1350**

comparison indicates clearly plaintiff to be the father. Certainly, res judicata is not applicable to such a situation.

Hansen & Hansen, Phil L. Hansen, Bryan L. McDougal, Salt Lake City, for plaintiff and appellant.

Gregory B. Wall, Salt Lake City, for defendant and respondent.

WILKINS, Justice:

This is an appeal from the refusal of the trial court to grant a writ of habeas corpus to Mr. Marticorena. The ruling was proper since the identical issues attempted to be litigated were determined on appeal between the same parties in the case of *Miller v. Miller and Marticorena.*[1]

In that case and in the present matter two men are each claiming to be the biological father of a child. Mr. Marticorena attempts by the writ of habeas corpus to obtain the custody of the child, and now wishes to show that he is the actual father. He now claims that the science of blood matching has been improved so that now the evidence will give a different result from that adjudged before.

Generally, where evidence on an issue is presented or could have been presented in a prior hearing, that issue cannot be raised a second time by means of a writ of habeas corpus.[2]

The judgment is affirmed. Costs are awarded to the respondent.

CROCKETT, C. J., and HALL, and STEWART, JJ., concur.

MAUGHAN, Justice (dissenting):

For the following reasons, I dissent.

The record demonstrates there could now be evidence which could not have been presented at the hearing in 1974. Plaintiff alleges circumstances have changed in that the features of the minor child, at the time of the prior hearing, had not sufficiently developed to allow comparison; but at the present time, the development is such that a

There is yet another ground upon which I would remand. At the time of the original hearing, blood tests were ordered by the court. These tests could not exclude either party. The record does not disclose what style of blood typing the tests were. However, at the present time, there exists a blood typing technique far more accurate and conclusive than the old ABO. This test is known as HLA typing (Human Leukocyte Antigen). It is possible such evidence was not available to plaintiff in 1974. If so, such would be a proper ground on which to remand.

That such a test was not available or unlikely to have been known to plaintiff is indicated by an observation of Paul I. Terasaki in his published paper, "Resolution by HLA Testing of 1,000 Paternity Cases Not Excluded by ABO Testing." [1]

Numerous recent reports have summarized the advancement of paternity testing since HLA testing has become possible. For example, the joint AMA–ABA guidelines for serologic testing in paternity cases clearly states that the HLA test is by far the most powerful single paternity test for exclusion. Theoretical calculations which support this statement have been provided by European authorities. The HLA system has now been used in Europe for five years, and to a more limited extent in the United States. The basic statistical formulas used in calculating the probability of paternity are predicated on Bayes' Theorem as applied by Essen-Moller.

In view of the fact ABO testing excludes less than ten percent, I would conclude the original blood test was ABO; and for the further reason the results of HLA testing would have stated the probabilities in percentage terms. HLA Testing is capable of reaching in the high nineties for inclusion,

1. Utah, 531 P.2d 487 (1975).

2. *Wood v. Turner*, 19 Utah 2d 133, 427 P.2d 397 (1967); *Gee v. Smith*, Utah, 541 P.2d 6 (1975).

1. Journal of Family Law, Vol. 16, 1977–1978, page 543, at page 544.

while being able to attain twenty-five percent exclusion.

For the foregoing reasons and because of the human involvement (which is of the essence), I would remand for analysis of the new evidence. Thus, the uncertainties in the lives of those involved could be removed.

In addition, it should be remembered the minor child cannot be illegitimated—thus Lord Mansfield's Rule loses its rationale, and should not be considered.

It can't be illegitimated for the reason that both plaintiff and defendant were married to the deceased mother—plaintiff at the time of the mother's death and defendant at the time of conception. However, plaintiff was living with the mother during the period when conception could have taken place—this while defendant was removed from the possibility of access.