The **STATE** of Utah, Plaintiff
and Appellant,

v.

Darren D. **EARL**, Defendant
and Respondent.

No. 20066.

Supreme Court of Utah.

March 21, 1986.

David L. Wilkinson, Atty. Gen., Salt Lake City, Donald J. Eyre, Jr., Nephi, for plaintiff and appellant.

Milton Harmon, Nephi, for defendant and respondent.

DURHAM, Justice:

This is an interlocutory appeal by the State of Utah from an order granting defendant's motion to suppress evidence of thirty-three pounds of marijuana discovered during a routine inventory search of the trunk of a rented car driven by defendant. We reverse.

On May 4, 1984, Trooper Paul V. Mangelson of the Utah Highway Patrol observed a motor vehicle approximately one hundred fifty feet off of temporary I–15 in an area that floods frequently. The officer became suspicious because the driver, defendant Darren D. Earl, had his shirt off and paid close attention to the officer as he drove past. After the officer observed the vehicle pull onto the highway, he made a U-turn, passed the vehicle in the opposite lane, and then made another U-turn and pulled in behind the vehicle. The officer followed the vehicle as the driver maintained a speed of 35 to 40 miles per hour and as the vehicle weaved from side to side within its lane of traffic. Based on these observations, the officer pulled the vehicle over.

The officer approached the vehicle and examined defendant's driver's license. Defendant failed to produce a registration for the vehicle and explained that he had leased the car in Tucson, Arizona. However, he was unable to produce a lease agreement.

Trooper Mangelson then requested that defendant accompany him to the patrol car so that the officer could further inquire concerning the ownership of the vehicle on his radio. While in the patrol car, defendant became very nervous and suddenly jumped out of the patrol car and started for his vehicle. Before defendant could reenter the car, the trooper caught defendant and placed him under custodial arrest

for failure to produce a registration or proof of ownership for the vehicle.

When Trooper Mangelson first approached defendant, he detected a strong odor of marijuana coming from the interior of the vehicle. Upon inquiry, defendant responded that there were a couple of joints of marijuana in the car, probably in a Levi jacket lying on the seat.

When the backup officer arrived, Trooper Mangelson returned to defendant's vehicle and searched the interior of the passenger compartment, where he found a fully loaded pistol, a cellophane bag containing a white substance Trooper Mangelson suspected was cocaine, and paraphernalia for using cocaine. Trooper Mangelson did not find any marijuana in the passenger compartment of the vehicle, but he did find some strong air fresheners.

After seizing the items in defendant's vehicle, Trooper Mangelson returned to the patrol car and informed defendant that he was also being charged with possession of a loaded firearm in a vehicle and illegal possession of a controlled substance.

Pursuant to Utah Highway Patrol policy, the officers arranged for defendant's vehicle to be towed to the Juab County Public Safety Building, where a written inventory could be made of the contents.

Prior to taking an inventory, the officers discussed the possibility of obtaining a search warrant, but they learned that the county attorney and both justices of the peace were out of town at the time. They therefore concluded that they would be following correct Highway Patrol policy and procedures if they conducted an inventory search. The officers then opened the car trunk and found two large, sealed, green plastic bags. The officers opened these bags and discovered thirty-three pounds of marijuana.

Defendant moved to suppress the introduction of the marijuana on the ground that the warrantless search of the trunk was an unreasonable search and seizure since the inventory search was conducted as a pretext for an investigatory search in

violation of the fourth amendment. The trial court granted the motion.

■ The issue before us is whether the warrantless search of the green garbage bags in the locked trunk of a lawfully impounded automobile violated defendant's rights against unreasonable searches and seizures accorded by the fourth amendment to the United States Constitution. There is no doubt that the search of defendant's automobile was proper under the rule of *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *See also United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982); *United States v. Johns*, — U.S. —, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). Officer Mangelson had probable cause to believe defendant's vehicle contained contraband. Specifically, defendant was driving a rental car after flying to Arizona from Utah, suggesting that he was a drug courier; strong air fresheners, a loaded firearm, a quantity of controlled substances, and paraphernalia were found in the vehicle when it was stopped, and defendant told the officer that additional marijuana was probably located in the car. These facts gave the officer probable cause to believe that additional contraband might be concealed somewhere in the vehicle.

■ Defendant concedes that there was probable cause to conduct the search at the time of the arrest, but argues that it could not be made without a warrant after the automobile was impounded. An "inventory" search under such circumstances was pretextual, defendant argues, and its fruits must be suppressed. A similar argument was summarily rejected in *Florida v. Meyers*, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984). In that case, a vehicle was impounded after its owner was arrested. A valid search was conducted at the time of arrest. A second search, without a warrant, was conducted after the vehicle was impounded, and the evidence seized pursuant to that search was ordered suppressed by the Florida District Court of

Appeal. The United States Supreme Court reversed, observing:

The District Court of Appeal either misunderstood or ignored our prior rulings with respect to the constitutionality of the warrantless search of an impounded automobile. In *Michigan v. Thomas*, 458 U.S. 259 [102 S.Ct. 3079, 73 L.Ed.2d 750] (1982), we upheld a warrantless search of an automobile even though the automobile was in police custody and even though a prior inventory search had already been made. That ruling controls the disposition of this case. In *Thomas*, we expressly rejected the argument accepted by the District Court of Appeal in the present case, noting that the search upheld in [*Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)] was conducted "after [the automobile] was impounded and [was] in police custody" and emphasizing that "the justification to conduct such a warrantless search does not vanish once the car has been immobilized." 458 U.S. [259], at 261 [102 S.Ct. 3079 at 3080–81, 73 L.Ed.2d 750 (1982)].

466 U.S. at 382, 104 S.Ct. at 1853. *Meyers* and *Thomas* are controlling and require reversal of the trial court's order of suppression in this case.

■ We note that neither the State nor defendant has discussed or relied independently on article I, section 14 of the Utah Constitution, which also contains a protection against unreasonable searches and seizures. We therefore have treated this case solely under the fourth amendment to the United States Constitution and have relied only on federal law. We have not considered separate state constitutional standards, even though we are aware that other states are relying with increasing frequency on an analysis of the provisions of their own constitutions to expand constitutional protection beyond that mandated by the United States Supreme Court. *See State v. Caraher*, 293 Or. 741, 750–52, 653 P.2d 942, 947–48 (1982), and cases cited therein.[1] Since it was not raised here, we

---

1. Some other states, by contrast, have explicitly held that provisions of their state constitutions

do not treat that question. We note, however, that despite our willingness to independently interpret Utah's constitution in other areas of the law, the analysis of state constitutional issues in criminal appeals continues to be ignored. *See, e.g., American Fork City v. Crosgrove,* Utah, 701 P.2d 1069 (1985) (scope of privilege against self-incrimination); *Malan v. Lewis,* Utah, 693 P.2d 661 (1984) (constitutionality of automobile guest statute); *Kearns-Tribune v. Lewis,* Utah, 685 P.2d 515, 520–22 (1984) (press access to preliminary hearings); *State v. Ball,* Utah, 685 P.2d 1055 (1984) (constitutionality of questioning a juror about drinking alcohol); *Gray v. Employment Security,* Utah, 681 P.2d 807, 825–29 (1984) (Durham, J., concurring and dissenting) (due process protections when terminating unemployment benefits). It is imperative that Utah lawyers brief this Court on relevant state constitutional questions. *See State v. Hygh,* Utah, 711 P.2d 264 (1985) (Zimmerman, J., concurring). We cite with approval the summary of scholarly commentary and analytic technique set forth by the Supreme Court of Vermont in *State v. Jewett,* Vt., 500 A.2d 233 (1985).[2]

The trial court's order of suppression is reversed, and this case is remanded for trial.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

provide no greater protections that the federal constitution. Alabama, Mississippi, and Illinois have adopted this viewpoint. *See Hill v. State,* Ala., 366 So.2d 318 (1979) (self-incrimination); *McCrory v. State,* Miss., 342 So.2d 897 (1977) (self-incrimination); *People v. Tisler,* 103 Ill.2d 266, 82 Ill.Dec. 613, 469 N.E.2d 147 (1984) (search and seizure).

2. *See generally* Linde, *E. Pluribus—Constitutional Theory and State Courts,* 18 Ga.L.Rev. 165 (1984); Brennen, *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489 (1977); Note, *The New Federalism, Toward a Principled Interpretation of the State Constitution,* 29 Stan.L.Rev. 297 (1977).